1

**SILVER GOLUB & TEITELL LLP**          **LEXINGTON LAW GROUP, LLP**

2

David S. Golub (*pro hac vice*)          Mark Todzo, Bar No. 168389
Steven L. Bloch (*pro hac vice*)          Patrick Carey, Bar No. 308623

3

Ian W. Sloss (*pro hac vice*)          503 Divisadero Street
Johnathan Seredynski (*pro hac vice*)          San Francisco, CA 94117

4

Jennifer Sclar (*pro hac vice* forthcoming)          Telephone: 415.913.7800
One Landmark Square, Floor 15          pcarey@lexlawgroup.com

5

Stamford, CT 06901          mtodzo@lexlawgroup.com
Telephone: (203) 325-4491

6

dgolub@sgtlaw.com

7

sbloch@sgtlaw.com
isloss@sgtlaw.com

8

jseredynski@sgtlaw.com
jsclar@sgtlaw.com

9

10

*Attorneys for Plaintiffs and the Proposed Classes*

11

### UNITED STATES DISTRICT COURT

12

### NORTHERN DISTRICT OF CALIFORNIA

13

### SAN JOSE DIVISION

14

15

A.A., a minor, by and through their guardian          Case No. 5:25-CV-06284-NW
ad Litem DEIDRE BOLIN; A.B., a minor, by

16

and through their guardian ad Litem CARESS          **MEMORANDUM OF LAW IN SUPPORT**
JOHNSON; A.C., a minor, by and through          **OF PLAINTIFFS' OPPOSITION TO**

17

their guardian ad Litem GREGARY          **DEFENDANT'S MOTION TO COMPEL**
JOHNSON; A.D., a minor, by and through          **ARBITRATION**

18

their guardian ad Litem TYLER LANGSAM;
A.E., a minor, by and through their guardian

19

ad Litem KEITH STRATTON; A.F., a minor,          Judge:                    Honorable Noël Wise
by and through their guardian ad Litem          Hearing Date:        April 15, 2026

20

JACOB VANDERSMITTE, individually and          Hearing Time:        9:00 a.m.
on behalf of all others similarly situated,          Hearing Location:   Courtroom 3

21

                                                                                      5th Floor

22

          *Plaintiffs,*                    280 South 1st Street
                                                                  San Jose, CA 95113

23

          v.

24

ROKU, INC.,

25

          *Defendant.*

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... - 1 -

II.   BACKGROUND ........................................................................................................ 2

III.  LEGAL STANDARD ................................................................................................ 3

IV.   ARGUMENT .............................................................................................................. 4

   a.  No agreements were formed between Plaintiffs and Roku ................................. 4

   b.  The principles of equitable estoppel do not apply. ........................................... 6

      i.    Roku cannot compel Plaintiffs to arbitrate via "preexisting-relationship estoppel." ........... 6

      ii.   Roku cannot compel Plaintiffs to arbitrate via "direct benefits estoppel." ......................... 8

      iii.  Roku cannot compel Plaintiffs to arbitrate via "intertwined claims" estoppel. ................. 11

   c.  It is not inequitable or unfair to permit Plaintiffs' claims against Roku to proceed. ............. 14

   d.  Plaintiffs have not agreed to any terms with Roku, including a delegation clause. .............. 15

V.    CONCLUSION ......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adzhikosyan v. AT&T Corp.*,
No 2:21-CV-05997-ODW (MRWx), 2021 WL 5982604 (C.D. Cal. Dec. 17, 2021) ................ 9

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ............................................................................................................ 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......................................................................................................... 19

*Atencio v. Bird Rides Inc.*,
No. 23-cv-04787-RGK-MAA, 2023 WL 8168955 (C.D. Cal. Nov. 3, 2023) .................... 13, 14

*B.F. v. Amazon.com Inc*,
858 F. App'x 218 (9th Cir. 2021) ...................................................................................... 8

*Bacon v. Avis Budget Grp., Inc.*,
No. 16-5939 (KM) (JBC), 2017 WL 2525009 (D.N.J. June 9, 2017) ................................ 8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......................................................................................... 21

*Brown v. Comcast Corp.*,
No. CV 16-00264-AB (SPx), 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) .................... 13

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .......................................................................................... 21

*Chan v. Charter Commc'ns Holding Co.*,
No. EDCV150886JGBKKX2015, WL 12655701 (C.D. Cal. Aug. 6, 2015) .................... 11, 21

*Charles v. Portfolio Recovery Assocs., LLC*,
No. 22-35613, 2024 WL 1672350 (9th Cir. Apr. 18, 2024) .............................................. 21

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......................................................................................... 21

*Christensen v. Findlay ARN, LLC*,
780 F. Supp. 3d 1077 (D. Nev. 2025) ................................................................................ 8

*Cnty. of Contra Costa v. Kaiser Found. Health Plan*,
47 Cal. App. 4th 237 (1996) .............................................................................................. 9

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) .......................................................................................... 14

*Corn v. Kohl's Corp.*,
   No. 24-CV-2455-CRB, 2025 WL 1785943 (N.D. Cal. June 9, 2025) ...................................... 12

*Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*,
   158 Cal. App. 4th 1061, 70 Cal. Rptr. 3d 605 (2008) ............................................................ 11

*Doe v. Roblox*,
   602 F. Supp. 3d 1243 (N.D. Cal. 2022) .................................................................................. 20

*Equal Emp. Opportunity Comm'n v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ..................................................................................................................... 6

*Ervin v. Nokia, Inc.*,
   349 Ill. App. 3d 508, 812 N.E.2d 534 (2004) ................................................................... 15, 19

*Facta Health, Inc. v. Pharmadent, LLC*,
   No. CV 20-09631 (SRC), 2020 WL 5957619 (D.N.J. Oct. 8, 2020) ...................................... 15

*Ford Motor Warranty Cases*,
   570 P.3d 857 (2025) ............................................................................................................... 9, 19

*Goldman v. KPMG, LLP*,
   173 Cal. App. 4th 209, 92 Cal. Rptr. 3d 534 (2009) ......................................................... 16, 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) ................................................................................................................... 21

*Hirsch v. Amper Fin. Servs., LLC*,
   215 N.J. 174, 71 A.3d 849 (2013) ........................................................................................... 15

*Hofer v. Emley*,
   19-cv-02205-JSC,2019 WL 4575389 (N.D. Cal. Sep. 20, 2019) ............................................ 15

*In re Henson*,
   869 F.3d 1052 (9th Cir. 2017) .................................................................................................... 7

*In re Marriage of Smith*,
   349 Ill. App. 3d 508, 806 N.E.2d 727 (2004) .......................................................................... 15

*In re Ring LLC Privacy Litig.*,
   No. cv-19-10899-MWF, 2021 WL 2621197 (C.D. Cal. June 24, 2021)................... 9, 10, 11, 15

*Kilgore v. KeyBank, Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) .................................................................................................. 21

*KPH Healthcare Servs., Inc. v. Janssen Biotech, Inc.*,
   No. 20CV05901KMESK, 2021 WL 4739601 (D.N.J. Oct. 12, 2021)...................................... 19

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ................................................................. 17

*Matricciani v. Am. Homeowner Pres., Inc.*,
  718 F. Supp. 3d 825 (N.D. Ill. 2024) ......................................................... 8

*Montoya v. Comcast Corp.*,
  No. 2:15-cv-02573-TLN-DB, 2016 WL 5340651 (E.D. Cal. Sep. 23, 2016) ...................... 18

*Motise v. Am. Online, Inc.*,
  346 F. Supp. 2d 563 (S.D.N.Y. 2004) ......................................................... 11

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ............................................................. 12, 16

*Murphy v. DirectTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ........................................................ 16, 17, 18

*Nat'l Football League v. Gruden*,
  573 P.3d 1240, 2025 WL 2317407 (Nev. 2025) .............................................. 17, 18

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................. 7, 12

*Nicosia v. Amazon.com, Inc.*,
  384 F. Supp. 3d 254 (E.D.N.Y. 2019) .......................................................... 11

*Rajagopalan v. Noteworld, LLC*,
  718 F.3d 844 (9th Cir. 2013) ........................................................... 4, 6, 19

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ........................................................................... 21

*In re Ring LLC Priv. Litig.*,
  No. CV1910899MWFRAOX2021, WL 4557222 (C.D. Cal. Sept. 3,2021) ............................... 11

*RUAG Ammotec GmbH v. Archon Firearms, Inc.*,
  538 P.3d 428 (Nev. 2023) ..................................................................... 16

*Ruiz v. Podolsky*,
  50 Cal. 4th 838, 237 P.3d 584 (2010) ........................................................ 10

*S.G. v. Epic Games, Inc.*,
  796 F. Supp. 3d 614 (N.D. Cal. 2025) ..................................................... 10, 11

*Truck Ins. Exch. v. Palmer J. Swanson, Inc.*,
  189 P.3d 656 (Nev. 2008) ..................................................................... 15

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) ........................................................................................... 4

*Valley Pizza, Inc. v. Herbst*,
   No. 24-cv-02934-TSH, 2024 WL 4394761 (N.D. Cal. Oct. 3, 2024) ......................................... 8

*Yeh v. Tesla, Inc.*,
   No. 23-cv-01704-JCS, 2023 WL 6795414 (N.D. Cal. Oct. 12, 2023) ......................... 11, 18, 19

**Statutes**

15 U.S.C. § 501       3

## I.    INTRODUCTION

On July 25, 2025, Plaintiffs[1] initiated this putative class action against Defendant Roku, Inc. ("Roku"). *See* Dkt. No. 1 ("Compl.") at 1. Plaintiffs allege that Roku unlawfully collected their personal information in violation of the Children's Online Privacy Protection Act, 15 U.S.C. § 501, *et seq.* and the laws of California, Nevada, New Jersey, and Illinois. *See, e.g., id.* ¶¶ 1–12, 52–103, 104–22, 123–69, 281–455. Roku seeks to compel Plaintiffs to arbitrate these claims pursuant to Roku's Terms and Conditions (the "T&C"). However, Plaintiffs are not parties to the T&C. As Roku acknowledges, Plaintiffs have not agreed to *anything* with Roku, let alone to arbitrate any dispute. Despite this, Roku argues that the T&C's Dispute Resolution Terms are enforceable against Plaintiffs under three "equitable doctrines," namely "pre-existing relationship estoppel," "direct-benefits estoppel," and "intertwined claims estoppel." *See* Dkt. No. 42 ("Roku Br.") at 14–19. As explained below, the T&C's provisions are not enforceable against Plaintiffs under any of these theories.

Roku also relies on the Federal Arbitration Act's ("FAA's") "national policy favoring arbitration" and general "principles of equity." However, neither argument is persuasive. *See id.* at 11, 19. The FAA's policy favoring arbitration does not apply to the question presented here, namely "whether a particular *party* is bound by the arbitration agreement." *Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (citation modified). Furthermore, principles of equity *favor Plaintiffs* here, as Roku aims to set a precedent in a case with particularly vulnerable plaintiffs (i.e., minors under 13) that would undermine the basic principle that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

---

[1] Plaintiffs are A.A., a minor, by and through their guardian ad litem Deidre Bolin, A.B., a minor, by and through their guardian ad litem Caress Johnson, A.C., a minor, by and through their guardian ad litem Gregary Johnson, A.D., a minor, by and through their guardian ad litem Tyler Langsam, A.E., a minor, by and through their guardian ad litem Keith Stratton, and A.F., a minor, by and through their guardian ad litem Jacob Vandersmitte.

## II.    BACKGROUND

Roku has, for years, made the calculated business decision to disregard the law and the privacy rights of the children who watch its programming by unlawfully collecting, sharing, and profiting from their personal information. By offering extensive programming designed and produced to attract young children while implementing no safeguards to protect their personal information, Roku exploits a goldmine of information from its most vulnerable audience to maximize its data collection and advertising revenue.

Roku offers low-cost devices, including televisions and streaming sticks, that allow consumers to access its programming. Compl. ¶ 3. Roku is able to offer its products at such a low cost in part because of the revenue it makes up for through advertising. *See* Compl. ¶ 170. These products run on Roku's own operating system, which Roku also licenses to major television manufacturers. Compl. ¶ 3. Roku has become the largest television streaming platform in the United States by hours streamed and is used by 90 million streaming households. Compl. ¶¶ 2–3. Roku users can access free, ad-supported content, including Roku's original programming, third-party content, internet content, and live television, as well as ad-free premium streaming subscriptions. Compl. ¶¶ 30–34. Roku offers extensive child-directed programming in its "Kids and Family" section, which contains more than 10,000 free children's shows and movies. Compl. ¶ 37.

The Children's Online Privacy Protection Act ("COPPA") protects children under 13 from having their personal information collected by operators of online services directed to children, or by operators with actual knowledge that they are collecting personal information online from children under 13, unless a parent has first given verifiable consent. Compl. ¶ 7. Despite this, Roku targets advertisements to children and collects, shares, and profits from the voice recordings, geolocation data, IP addresses, and browsing histories ("Personal Information") of children. Compl. ¶¶ 4, 8, 113. Roku also permits third parties to do the same. Compl. ¶¶ 5, 65–73. Roku applies its data collection practices to each user, including those who exclusively view children's content, regardless of that user's age. Compl. ¶ 52.

All Plaintiffs were under 13 during the relevant period.[2] Compl. ¶¶ 18–23. Specifically, Plaintiff A.B. was 4 or 5 years old when A.B.'s mother and legal guardian, Caress Johnson, purchased a Roku device and created a Roku account around 2018. Ex. 1 ¶ 2. Plaintiff A.C. was 3 years old when A.C.'s father and legal guardian, Gregary Johnson, purchased a Roku device and created a Roku account in 2019. Ex. 2 ¶ 2. Plaintiff A.D. was not yet born when his aunt, the sister of his father and legal guardian, Tyler Langsam, purchased a Roku device in 2016. Ex. 3 ¶ 2. Plaintiff A.E. was approximately 1.5 years old when his father and legal guardian, Keith Stratton, purchased a Roku device and created a Roku account in 2020. Ex. 4 ¶ 2. Plaintiff A.F. was around 3 years old when A.F.'s father and legal guardian, Jacob Vandersmitte, purchased a Roku device and created a Roku account in 2022. Ex. 5 ¶ 2.

All Plaintiffs were exposed to Roku's child-directed programming on devices purchased and accounts created by their family members. *See* Exs. 1–5 ¶¶ 2–3. None of the minor Plaintiffs signed an agreement with Roku, nor were they aware of any service agreement between their family members and Roku. *Id.* ¶¶ 4–6. Roku's account terms state:

> By creating an account, you represent that (1) all required registration or other information you provide is truthful and accurate, (2) *you are at least 18 years of age* (or of legal age/age of majority in your country to agree to these terms), and (3) your use of our products and services will not violate any applicable law or regulation or these terms.

Roku Br., Ex. C at 1 (emphasis added). And its account creation requirements state, "You must be (a) at least eighteen (18) years of age, or the age of majority in your country; and (b) have the legal right to use the payment methods selected by you for use with your Roku Account." Roku Br., Ex. F at 1.

## III.    LEGAL STANDARD

Contrary to Roku's arguments, the FAA's policy favoring arbitration does not apply to the determination of whether a particular party is bound by an arbitration agreement. See *Rajagopalan*,

---

[2] Declaration ("Decl.") of Johnathan Seredynski in Support of Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration, Exhibits ("Exs.") 1 (Decl. of Caress Johnson), 2 (Decl. of Gregary Johnson), 3 (Decl. of Tyler Langsam), 4 (Decl. of Keith Stratton), and 5 (Decl. of Jacob Vandersmitte) ¶ 3.

718 F.3d at 847; *see also Equal Emp. Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("[W]e look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement.").

Traditional principles of state law govern contract formation, as well as whether contracts may be enforced against nonparties through estoppel. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009*); see also In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017). "Federal courts sitting in diversity look to the law of the forum state—here, California—when making choice of law determinations." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Roku argues that "Delaware law applies to this transaction," as specified by Roku's "current dispute resolution terms." Roku Br. at 12. However, "whether the choice of law provision applies depends on whether the parties agreed to be bound by [Roku's dispute resolution terms] in the first place." *Nguyen*, 763 F.3d at 1175. Plaintiffs never agreed to be bound by the agreement in which the Delaware choice of law provision appears. *Cf. In re Henson*, 869 F.3d at 1059 (finding district court erred by applying New York law based on choice-of-law provision where parties never agreed to be bound by the contract in which it appeared). In any event, Roku concedes that there is no material difference, on the facts of this case, between Delaware's and California's laws on contract formation and equitable estoppel. *See* Roku Br. at 12–13, 14–19.

As Roku appears to acknowledge, the states where Plaintiffs reside—California, Nevada, New Jersey, and Illinois, each have an interest in the application of their laws here. *See, e.g.,* Roku Br. at 12. However, as explained below, Plaintiffs prevail under the laws of each of these states. Therefore, the Court does not need to conduct a choice of law analysis to determine whether Roku can compel Plaintiffs to arbitrate their claims. *Cf., e.g., In re Henson*, 869 F.3d at 1060.

## IV.    ARGUMENT

### a.  No agreements were formed between Plaintiffs and Roku.

Because no agreements were formed between Plaintiffs and Roku,[3] many of Roku's arguments are irrelevant.

---

[3] There is no material difference here among the contract formation laws of California, Illinois, Nevada, and New Jersey. *Valley Pizza, Inc. v. Herbst*, No. 24-cv-02934-TSH, 2024 WL 4394761, at

1    Roku argues that clickwrap agreements, such as Roku's, are routinely enforced and that

2    Plaintiffs' parents agreed to arbitrate disputes with Roku. Roku Br. at 12–13. However, Plaintiffs

3    themselves never agreed to or reviewed Roku's T&C.[4] Roku's own terms specify that

4    accountholders must be at least 18 years old or the legal age of majority in their country. Roku Br.,

5    Exs. C, F at 1. This language explicitly precludes Roku's terms from applying to minors, such as

6    Plaintiffs, who were all under 18 during the relevant period. Decls. of Caress Johnson, Gregary

7    Johnson, Tyler Langsam, Keith Stratton, and Jacob Vandersmitte ¶¶ 2–3.

8    Plaintiffs, as non-signatories are not bound by the arbitration clause included in the

9    agreement between their family members and Roku. *See, e.g., B.F. v. Amazon.com Inc*, 858 F.

10    App'x 218, 220–22 (9th Cir. 2021) (holding that the minor plaintiffs, who were non-signatories,

11    were not bound by their parents' agreement to arbitrate); *In re Ring LLC Privacy Litig.,* No. cv-19-

12    10899-MWF, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021) (minor plaintiffs not bound by

13    arbitration provision in contracts signed by their parents). "The general rule is that one must be a

14    party to an arbitration agreement either to be bound by or to invoke it." *Ford Motor Warranty*

15    *Cases*, 570 P.3d 857, 860 (2025); *see also Adzhikosyan v. AT&T Corp.*, No 2:21-CV-05997-ODW

16    (MRWx), 2021 WL 5982604, at *5 (C.D. Cal. Dec. 17, 2021) ("The policy favoring arbitration

17    cannot displace the necessity for a voluntary agreement to arbitrate . . . . Generally, parties who

18

19    _____

20    *2 (N.D. Cal. Oct. 3, 2024) ("Under California law, a contract requires (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) consideration."); *Matricciani v. Am. Homeowner Pres., Inc.*, 718 F. Supp. 3d 825, 836 (N.D. Ill. 2024) ("Under Illinois law, an offer, an

21    acceptance and consideration are the basic ingredients of a contract."); *Christensen v. Findlay ARN, LLC*, 780 F. Supp. 3d 1077, 1082 (D. Nev. 2025) ("Under Nevada law, "[b]asic contract principles

22    require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration."); *Bacon v. Avis Budget Grp., Inc.*, No. 16-5939 (KM) (JBC), 2017 WL 2525009, at

23    *7 (D.N.J. June 9, 2017) ("Under New Jersey law, a binding contract requires four things: an offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms.").

24

25    [4] *See* Decls. of Caress Johnson, Gregary Johnson, Tyler Langsam, Keith Stratton, and Jacob Vandersmitte ¶¶ 4–6. While Roku claims that Plaintiffs' parents agreed to arbitrate, Roku's

26    declaration and the accompanying exhibits do not confirm this. *See* Decl. of Julian Riediger. Roku describes the standard process and forms for creating a Roku account and states that Plaintiffs'

27    parents did not submit an opt out request to the arbitration agreement. Roku Br. 8–10; Decl. of Julian Riediger ¶ 14. However, Roku has not provided any records demonstrating Plaintiffs' parents' affirmative agreement to Roku's T&C. *See* Roku Br. Exs. A–B, G (providing general

28    accountholder information but none specific to Plaintiffs' parents). Moreover, in at least one instance, a Plaintiff's parent is not the accountholder of the Roku account the Plaintiff uses. Ex. 3 ¶ 3.

1    have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms.")

2    (citation modified).

3        **b.  The principles of equitable estoppel do not apply.**

4               **i.  *Roku cannot compel Plaintiffs to arbitrate via "preexisting-relationship***

5                    ***estoppel."***

6        Roku claims it is equitable to enforce Roku's T&C against Plaintiffs because a "preexisting

7    relationship" exists between Plaintiffs and their parents. See Roku Br. 14–16.

8        Under California law, decisions invoking estoppel to bind a nonsignatory child based on a

9    pre-existing relationship are generally grounded in the "implied authority" of a parent to contract

10   for medical services on behalf of their children. *See Cnty. of Contra Costa v. Kaiser Found. Health*

11   *Plan*, 47 Cal. App. 4th 237, 243 (1996) (collecting cases in support of rule that "a person who has

12   authority to contract for medical services on behalf of another may, in the exercise of that authority,

13   bind that person to an agreement to arbitrate his or her medical malpractice claims" and recognizing

14   that "a preexisting relationship between the nonsignatory and one of the parties to the arbitration

15   agreement is a common factor in these cases"). Within this context, the California Supreme Court

16   has explained:

17           [A]rbitration derives its legitimacy from the fact that the parties consent to resort to
     the arbitral forum rather than litigation, with its possibility of a jury trial . . . . Such
18           consent is generally required. But as discussed, the case law has recognized a
     number of instances *in the health care setting* in which agreements to arbitrate have
19           bound nonsignatory third parties, including children . . . . [T]hese cases rely on
     common law principles such as fiduciary duty and agency . . . .
20

21   *Ruiz v. Podolsky*, 50 Cal. 4th 838, 852, 237 P.3d 584 (2010).

22       *In re Ring LLC Privacy Litigation*, No. CV 19-10899-MWF (RAOx), 2021 WL 2621197

23   (C.D. Cal. June 24, 2021) indicates that pre-existing relationship estoppel does not apply under the

24   facts of this case. In *Ring*, the court held that a group of non-purchaser plaintiffs, including children

25   of parents who owned and set up *Ring* security cameras in their home pursuant to an agreement with

26   an arbitration provision, were not compelled to arbitrate their privacy claims. *Id.* at *8. The court

27   explicitly rejected the argument that "pre-existing relationship estoppel" should apply to "adhesion

28   contracts for consumer goods," reasoning that it was not convinced that "the authority to contract

for goods beyond necessitates like education or medical care is implicit in a parent or guardian's duty to provide for the care of her child or dependent." *Id.*

While Roku cites two cases where courts within the Ninth Circuit considered the factor of a preexisting relationship in compelling arbitration under a contract for consumer goods, both are distinguishable. In *S.G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025), the plaintiff's father testified that the plaintiff "shared" the account with him, that the plaintiff made some of the purchases at issue with his own money, and that someone using the account "continued to accept" the applicable terms and conditions while making purchases. The court observed: "the record here supports the conclusion that *either* [the plaintiff] or his father signed [the terms and conditions] on numerous occasions, but does not provide the Court with sufficient information to determine which one did so." *Id.* at 619–20. The court concluded that, even assuming the plaintiff never accepted the terms and conditions himself, the plaintiff's father assented to certain terms "on [his child's] behalf and for [his child's] benefit," in a manner that was "no different than the waiver forms parents routinely sign on behalf of their children to allow them to participate in sports or other recreational activities." *Id.* at 620–21.

In *Yeh v. Tesla, Inc.*, No. 23-cv-01704-JCS, 2023 WL 6795414, at *8 (N.D. Cal. Oct. 12, 2023), the court stated that it "need not decide whether the *Ring* court's gloss on California law governing the application of the doctrine of equitable estoppel to arbitration agreements in the parent-child context is correct because the specific facts of this case are distinguishable from the facts in *Ring*." The court noted that the plaintiff "specifically allege[d] that he purchased the Model Y because he and his wife were expecting their first child and believed it would be a safe and reliable vehicle," and that "Tesla would be mindful of protecting his family's privacy." *Id.* Thus, the plaintiff's purchase "was, at least in part, to benefit and provide care for his child." *Id.* However, the court made clear that "[t]here is no bright-line rule under California law . . . that a child's claims must always be arbitrated whenever their parent has entered into an arbitration agreement related to the subject matter of the claims. Rather, courts have reached different conclusions based on the

specific facts relating to the equities of the situation." *Id.* at *7.[5]

Unlike *Epic Games* and *Tesla*, there is no evidence here that the accountholders accepted Roku's T&C on Plaintiffs' behalf and for their benefit in a manner analogous to contracting for medical services or school activities. Most of the accountholders here accepted Roku's T&C while setting up their own accounts on household devices. *See* Compl. ¶¶ 206–59. Notably, in the case of minor Plaintiff A.D., a preexisting relationship is not present because A.D.'s parent was not the purchaser of the product nor the holder of the account through which A.D. accessed Roku programming. Ex. 3 ¶¶ 2–3. In fact, A.D. was not born at the time A.D.'s family purchased and set up the Roku product. *Id.*

Finally, Roku does not cite any cases indicating that "preexisting relationship estoppel" applies under the laws of Nevada, Illinois, or New Jersey, and Plaintiffs have not found any. *See* Roku Br. at 14–16.

### ii.    Roku cannot compel Plaintiffs to arbitrate via "direct benefits estoppel."

Roku urges the Court to compel Plaintiffs to arbitrate under a theory of "direct benefits estoppel." *See* Roku Br. at 16–17. This theory applies when a party "knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). Plainly, the non-signatory must (1) know about the agreement and (2) actively seek a benefit "directly" from it. *See Nguyen*, 763 F.3d

---

[5] The other cases Roku cites do not move the needle in its favor. *Chan v. Charter Commc'ns Holding Co.* is of "limited persuasive value" because the non-signatory children were not parties in the case, and thus the court's discussion as to whether they would be bound by their parents' arbitration agreement was merely dictum. 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015). *See Ring*, 2021 WL 4557222, at *3 (finding *Chan* to be of "limited persuasive value"). *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 70 Cal. Rptr. 3d 605 (2008) did not involve a preexisting relationship between the signatory and non-signatory for the court to analyze the facts and equities of the situation.

Roku also cites two Second Circuit cases, neither of which is binding nor relevant. *See Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004) (addressing enforceability of forum selection clause arising out of adult child's use of parent's AOL account; no mention of estoppel); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 258–59, 272 (E.D.N.Y. 2019) (in case involving husband's use of wife's account, discussion of traditional and direct benefits estoppel, but not close-relationship estoppel), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).

at 1179; *see also Corn v. Kohl's Corp.*, No. 24-CV-2455-CRB, 2025 WL 1785943, at *2 (N.D. Cal. June 9, 2025) (holding that non-signatory "knowingly exploited the Rewards Agreement because she took affirmative steps to associate her transaction with her husband's Rewards Account," by, among other things, inputting her husband's cell phone number on the customer-facing keypad at checkout, which resulted in her transaction generating rewards for the account in the form of "Kohl's Cash").

Plaintiffs, all minor children, did not have knowledge of Roku's T&C at any relevant time. Decls. of Caress Johnson, Gregary Johnson, Tyler Langsam, Keith Stratton, and Jacob Vandersmitte ¶¶ 5–6. Plaintiffs have not actively sought a benefit directly from the T&C, and their claims are independent of the terms of the T&C. Therefore, their situation is similar to the facts in *Brown v. Comcast Corp.*, No. CV 16-00264-AB (SPx), 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) and distinct from the facts in *Atencio v. Bird Rides Inc.*, No. 23-cv-04787-RGK-MAA, 2023 WL 8168955 (C.D. Cal. Nov. 3, 2023), which Roku references.

In *Brown v. Comcast Corp.*, the plaintiff sued a major cable and internet service provider for alleged violations of the Telephone Consumer Protection Act ("TCPA"). 2016 WL 9109112, at *1. The defendant moved to compel arbitration, arguing that the plaintiff had lived for a period of a few months at an address with an active service agreement containing an arbitraton provision. *Id.* During that time, the plaintiff had received and benefited from the defendant's services, and the plaintiff's phone number was listed as an account contact. *Id.* The court declined to apply direct benefits estoppel, emphasizing that the plaintiff "was not even aware of any underlying agreement." *Id.* at *7. As a result, "he could not have taken an affirmative step to directly benefit from an agreement that he did not even know existed." *Id.* Moreover, the Plaintiff was not "seeking to enforce the terms of the [agreement] or take advantage of them" by bringing a claim under the TCPA. *Id.*

*Atencio v. Bird Rides Inc.* involved a personal injury claim following a scooter accident. The court estopped the plaintiff from avoiding the arbitration provision in her son's rental agreement with the scooter company, noting that she "d[id] not deny knowing that the scooter was being rented by her son." 2023 WL 8168955, at *2. Moreover, the plaintiff brought "several

claims . . . predicated on violations of a duty that [the defendant] owed as the lessor of the defective scooter," meaning the plaintiff sought to "rely on the Rental Agreement to pursue her action." *Id.* In contrast to *Brown*, the facts in *Atencio* supported application of direct benefits estoppel.

These cases indicate that Plaintiffs did not "exploit" the T&C by bringing claims under the laws of California, Nevada, New Jersey, and Illinois based on Roku's alleged violations of COPPA. Nor did Plaintiffs exploit the T&C by passively receiving access to Roku devices and services through their parents' accounts, as Roku argues. *See* Roku Br. at 17. On this point, *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006), the leading Ninth Circuit case on equitable estoppel in this context, is instructive.

In *Comer*, the Ninth Circuit addressed the question of "whether an ERISA-plan participant can be compelled to arbitrate an ERISA claim brought on behalf of the plan where the plan—but not the participant—has signed an arbitration agreement." *Id.* at 1099 (9th Cir. 2006). The defendant, an investment advisor, argued that the participant should be compelled to arbitrate via a direct benefits estoppel theory. *Id.* at 1101. The Ninth Circuit disagreed, explaining: "The insurmountable hurdle for [the defendant] is that there is no evidence [the participant] knowingly exploited the agreements containing the arbitration clauses . . . . ." *Id.* at 1102 (citation modified). The Ninth Circuit emphasized:

> Prior to his suit, [the participant] was simply a participant in trusts managed by others for his benefit. He did not seek to enforce the terms of the management agreements, nor otherwise to take advantage of them. Nor did he do so by bringing this lawsuit, which he bases entirely on ERISA, and not on the investment management agreements. [The defendant's] attempt to shoehorn [the participant's] status as a passive participant in the plans into his "knowing exploitation" of the investment management agreement fails.

*Id.*

*Comer* provides an important limiting principle for direct benefits estoppel: Passively benefitting from the *result* of an agreement (i.e., money in an ERISA plan) is different from knowingly exploiting the *terms* of an agreement. Direct benefits estoppel requires the latter. California and Nevada follow this approach. *See, e.g., Ring*, 2021 WL 2621197, at *8 (declining to apply direct benefits estoppel to compel arbitration where non-purchaser plaintiffs alleged they were passively monitored and thereby harmed by Ring devices that were installed and used in their

1  homes, finding there was there was "no evidence" the non-purchaser plaintiffs "***knowingly***

2  ***exploited***" the terms of Ring's service agreement); *Hofer v. Emley*, No.19-cv-02205-JSC, 2019 WL

3  4575389, at *8 (N.D. Cal. Sep. 20, 2019) ("[The non-signatory] had knowledge of the Agreement . .

4  . . [and] seeks to knowingly exploit the benefits of the Agreement by alleging that Getaround

5  breached a duty that arose, at least in part, from the Agreement . . . . Accordingly, the Court

6  concludes that the Agreement's arbitration provision applies to Jonathan Hofer's negligence claim

7  against Getaround."); *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 661–62 (Nev.

8  2008) (refusing to compel party to arbitrate via direct benefits estoppel where party was "not

9  attempting to assert any rights under the written agreement").

10    Under the laws of New Jersey and Illinois, "the doctrine of equitable estoppel does not apply

11  absent proof that a party detrimentally rel[ied] on another party's conduct." *Hirsch v. Amper Fin.*

12  *Servs., LLC*, 215 N.J. 174, 71 A.3d 849, 860 (2013); *see also Facta Health, Inc. v. Pharmadent,*

13  *LLC*, No. CV 20-09631 (SRC), 2020 WL 5957619, at *3 (D.N.J. Oct. 8, 2020) (under New Jersey

14  law, party asserting estoppel must establish detrimental reliance); *In re Marriage of Smith*, 349 Ill.

15  App. 3d 508, 806 N.E.2d 727, 730–31 (2004) (under Illinois law, party asserting estoppel must

16  establish detrimental reliance*); Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 812 N.E.2d 534, 542

17  (2004) (declining to follow expanded interpretation of equitable estoppel, emphasizing that "a party

18  cannot be required to submit to arbitration any dispute which he has not agreed so to submit."").

19  Here, Roku has not even attempted to argue or prove that it expected to arbitrate its disputes in

20  detrimental reliance on Plaintiffs' conduct.

21    Under any of these applicable standards, "direct benefits" estoppel does not apply here.

22    **iii.    Roku cannot compel Plaintiffs to arbitrate via "intertwined claims"**

23  **estoppel**.

24    Roku also relies on what it terms "intertwined claims" estoppel, but this argument fails for

25  two independently sufficient reasons. First, this theory generally only applies when a nonsignatory

26  seeks to compel a signatory to arbitrate. *See Mundi*, 555 F.3d at 1046 (describing the two types of

27  equitable estoppel in the arbitration context as: (1) direct benefits estoppel, by which a nonsignatory

28  can be compelled to arbitrate with a signatory, and (2) intertwined claims estoppel, by which a

1    signatory can be compelled to arbitrate with a nonsignatory); *see also Murphy v. DirectTV, Inc.*, 724

2    F.3d 1218, 1230 (9th Cir. 2013) (describing theory of estoppel under California law whereby a

3    nonsignatory can enforce an arbitration clause against a signatory whose "claims are intimately

4    founded in and intertwined with the underlying contract"); *RUAG Ammotec GmbH v. Archon*

5    *Firearms, Inc.*, 538 P.3d 428, 435 (Nev. 2023) (direct benefits estoppel is used by signatories to

6    compel arbitration with nonsignatories, and intertwined claims estoppel is used by nonsignatories to

7    compel arbitration with signatories). Intertwined claims estoppel "reflects the policy that a plaintiff

8    may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the

9    agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's

10   applicability because the defendant is a non-signatory.'" *Murphy*, 724 F.3d at 1229 (quoting

11   *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220, 92 Cal. Rptr. 3d 534 (2009)). There is far less

12   precedent for using intertwined claims estoppel to compel nonsignatories to arbitrate, and the Court

13   should decline to expand the "narrowly confined" doctrine. *See id.*

14        Second, even assuming intertwined claims estoppel can and should be used to compel

15   nonsignatories to arbitrate with signatories, it does not apply here. Plaintiffs' claims are not

16   "intimately founded in and intertwined with" the T&C, nor are they "seeking to hold [Roku] liable

17   pursuant to duties imposed by" the T&C. *See id.*

18        In *Murphy v. DirectTV*, the plaintiffs brought consumer protection claims against DirecTV

19   and Best Buy, alleging that purchases they thought they had made of DirecTV equipment at Best

20   Buy stores were actually leases with oppressive and unfair terms. *Id.* at 1223–24. The plaintiffs had

21   entered into an agreement with DirecTV containing an arbitration provision. *Id.* at 1224. The district

22   court determined that, although Best Buy was a non-signatory to the agreement, the plaintiffs

23   should be estopped from avoiding arbitration with Best Buy. *Id.* at 1229. The district court reasoned

24   that "the lawsuit against Best Buy is inseparable from the lawsuit against DirecTV." *Id.* Upon

25   review, the Ninth Circuit reversed, holding that "Plaintiffs' claims against Best Buy do not rely on,

26   and are not intertwined with, the substance of the DirecTV Customer Agreement or Lease

27   Addendum." *Id.* at 1230. The Ninth Circuit explained:

28             The complaint is replete with allegations of deceit by Best Buy that have nothing to
           do with the Customer Agreement . . . . None of these allegations rely on the

Customer Agreement or attempt to seek to benefit from its terms. Even if Best Buy is correct that Plaintiffs' claims on some abstract level require the existence of the Customer Agreement, the law is clear that this is not enough for equitable estoppel. In California, equitable estoppel is inapplicable where a plaintiff's "allegations reveal no claim of any violation of any duty, obligation, term, or condition imposed by the [customer] agreements."

*Id.* (quoting *Goldman*, 92 Cal. Rptr. at 551); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1131 (9th Cir. 2013) (rejecting car manufacturer's argument that Plaintiffs' claims were intertwined with underlying contracts with dealerships because claims relied on existence of vehicle purchase transactions); *Nat'l Football League v. Gruden*, 573 P.3d 1240, 2025 WL 2317407, at *3 (Nev. 2025) (applying California law and declining to compel arbitraton against signatory where claims against non-signatory were "not intertwined with [the] contract" insofar as claimant "d[id] not argue any breach of a contractual duty," but instead focused on "actions external to the contract").

*Murphy*'s application to the instant case is clear—even if Roku is correct that Plaintiffs' claims "on some abstract level require" the existence of the Agreement, that is not enough for equitable estoppel where Plaintiffs' claims "reveal no claim of any violation of any duty, obligation, term, or condition" imposed by the Agreement. *See Murphy*, 724 F.3d at 1230. Thus, intertwined claims estoppel does not apply.

While Roku compares this case to *Montoya v. Comcast Corp.*, No. 2:15-cv-02573-TLN-DB, 2016 WL 5340651 (E.D. Cal. Sep. 23, 2016) and *Tesla*, 2023 WL 6795414, both are distinguishable. In *Montoya*, the court applied equitable estoppel because the plaintiffs "continuously refer[ed] to themselves as 'subscribers' and 'customers'" and "actively utilized the infrastructure of [the] defendant's company by asking for additional security measures[.]" 2016 WL 5340651, at *5 n.2. The court also emphasized that Plaintiffs' action was "seeking to enforce the benefits of the contract," including the protection of their personal information. *See id.* at *6. Here, Roku has not shown that Plaintiffs "actively utilized" the infrastructure of defendant's company in a similar fashion or that Plaintiffs' action seeks to "enforce the benefits of" the T&C.

In *Tesla*, a Tesla purchaser, Yeh, and his one-year-old son, G.Y., brought a putative class action alleging Tesla's failure to protect their privacy in connection with video footage captured by

1   cameras in their Tesla vehicle. 2023 WL 6795414, at *1. The case was originally brought by Yeh as

2   the sole plaintiff. *Id.* After Tesla brought a motion to compel arbitration, Yeh responded by filing an

3   amended complaint including all of the claims asserted in the original complaint and adding G.Y. a

4   plaintiff. *Id.* at *2. Tesla then renewed its motion to compel arbitration. *Id.* The court applied

5   equitable estoppel to grant Tesla's motion, emphasizing: "[T]here are no separate factual allegations

6   as to the claims that are asserted jointly . . . . those claims are based, at least in part, on Yeh's

7   understanding of Tesla's privacy policy." *Id.* at *8. Here, unlike the plaintiffs in *Tesla*, Plaintiffs

8   have brought claims independently, all of which exist independent from the Agreement.

9       Finally, Roku fails to cite any cases indicating that non-signatories can be compelled to

10  arbitrate via intertwined claims estoppel under the laws of New Jersey or Illinois. Again, New

11  Jersey and Indiana law require "detrimental reliance" for equitable estoppel claims, which Roku has

12  not attempted to argue or prove. *See, e.g., KPH Healthcare Servs., Inc. v. Janssen Biotech, Inc.*, No.

13  20CV05901KMESK, 2021 WL 4739601, at *7 (D.N.J. Oct. 12, 2021) (explaining that under New

14  Jersey law, "[t]hat the claims and parties be intertwined is necessary, but not sufficient, to require

15  arbitration" as a showing of "detrimental reliance" is also necessary); *Ervin*, 812 N.E.2d at 542

16  (declining to adopt expanded view of equitable estoppel in arbitration context). Therefore, under the

17  laws of California, Nevada, New Jersey, and Illinois, "intertwined claims" estoppel does not apply

18  in this case.

19      **c.   It is not inequitable or unfair to permit Plaintiffs' claims against Roku to proceed.**

20      As previously explained, the federal policy favoring arbitration does not apply to the

21  question of "whether a particular *party* is bound by the arbitration agreement." *Rajagopalan v.*

22  *Noteworld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (internal quotation marks and citation omitted);

23  *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration

24  is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

25  has not agreed so to submit.") (internal quotation marks and citation omitted)).

26      Moreover, principles of equity support denying Roku's motion. Because arbitration

27  agreements are contracts, consent is a key principle in arbitration decisions. *Ford Motor*, 570 P.3d

28  at 861. Here, Plaintiffs have not expressly consented to anything. And Roku's request that this

Court use estoppel to circumvent Plaintiffs' lack of consent is particularly concerning from a policy perspective because all Plaintiffs are minor children. "When it comes to contract formation or interpretation, courts often take into account particular features of individuals doing the contracting," including whether the party is legally sophisticated or not. *Doe v. Roblox*, 602 F. Supp. 3d 1243, 1257 (N.D. Cal. 2022). For instance, California law recognizes that "children have less capacity than adults to assent to contractual terms" and "shields minors from their lack of judgment and experience." *Id.* at 1257. Each Plaintiff was under thirteen years old when his or her family member set up a Roku account and agreed to Roku's T&C. Plaintiffs have done nothing more than passively receive Roku's services via their family members' accounts. Decls. of Caress Johnson, Gregary Johnson, Tyler Langsam, Keith Stratton, and Jacob Vandersmitte ¶ 2 (detailing how Plaintiffs' ages ranged from not yet born to 5 years old). Plaintiffs lacked the capacity to understand the terms of their family members' agreements with Roku, let alone agree to them.

       As detailed in the Complaint, Roku was aware that very young children used its products, which include many child-directed programs and features. Compl. ¶¶ 36–51. Roku capitalized on this fact by unlawfully tracking the children's viewing patterns and data, exposing the children to behavioral advertising, and sharing their data with third parties. Now, Roku seeks to bind the same children to an agreement they lacked the capacity to understand or enter into with Roku. Roku should not be permitted to do this. If Roku's goal was to avoid legal action from minors, it should have implemented effective safeguards to prevent unlawful tracking, use, and sharing of minors' information.

       **d.  Plaintiffs have not agreed to any terms with Roku, including a delegation clause.**

       Roku's remaining arguments—that (1) its terms delegate arbitrability so that an arbitrator must determine if Roku's arbitration agreement encompasses the dispute at issue, and (2) that Plaintiffs' claims fall within its arbitration agreement—are irrelevant. Plaintiffs cannot be found to have consented to a delegation clause for the same reasons they cannot be found to have agreed to any of Roku's terms. The Court can only compel arbitration if "a valid agreement to arbitrate exists and, if it does . . . the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). Because Plaintiffs have established that no agreement

to arbitrate exists between them and Roku, the Court need not engage in the analysis of whether arbitrability has been delegated to the arbitrator here.

Roku's cited authorities do not refute this, as the courts in those cases had already found that an agreement existed binding the parties prior to addressing the issue of delegating arbitrability. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1128 (9th Cir. 2000) ("We are not presented with a disagreement over whether the parties agreed to arbitrate."); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 66 (2019) (establishing a "relevant contract between the parties"); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1025 (9th Cir. 2022) (same); *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) (an employment action that recognized the parties entered an agreement); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 64 (2010) (same); *Rodarte v. Betterhelp, Inc.*, No. 24-cv-07154-NW, ECF No. 44 at 5 (N.D. Cal. July 14, 2025) (Wise, J.) (the plaintiff conceded she assented to the terms and conditions); *Charles v. Portfolio Recovery Assocs., LLC*, No. 22-35613, 2024 WL 1672350, at *1 (9th Cir. Apr. 18, 2024) (plaintiff was the account holder of the credit card account at issue); *Chan*, 2015 WL 12655701, at *1 ("[p]laintiffs entered into a written agreement with Defendants").

## V.    CONCLUSION

The Court should deny Roku's motion to compel arbitration in its entirety, and Plaintiffs' claims should proceed in this Court.

Dated: February 9, 2026

Respectfully submitted,

SILVER GOLUB & TEITELL LLP

By: _____
David S. Golub (*pro hac vice*)
Steven L. Bloch (*pro hac vice*)
Ian W. Sloss (*pro hac vice*)
Johnathan Seredynski (*pro hac vice*)
Jennifer Sclar (*pro hac vice* forthcoming)
One Landmark Square, Floor 15
Stamford, CT 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

jseredynski@sgtlaw.com
jsclar@sgtlaw.com

**LEXINGTON LAW GROUP, LLP**
Mark Todzo, Bar No. 168389
Patrick Carey, Bar No. 308623
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415.913.7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

*Attorneys for Plaintiffs*