**MORRISON & FOERSTER LLP**
Eric J. Weiss, *pro hac vice*
EWeiss@mofo.com
Mallory A. Gitt, *pro hac vice*
MGitt@mofo.com
925 Fourth Avenue, Floor 38
Seattle, Washington 98104-1157
Telephone: 206.327.6500
Facsimile: 206.260.8813

Anthony J. Mahmud, *pro hac vice*
AMahmud@mofo.com
250 West 55th St.
New York, NY 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

Alberto Corona, Bar No. 339906
ACorona@mofo.com
425 Market St.
San Francisco, CA 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522

**WILSON SONSINI GOODRICH & ROSATI**
Victor Jih, Bar No. 186515
vjih@wsgr.com
Kelly H. Yin, Bar No. 328380
kyin@wsgr.com
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067
Telephone: 424.446.6900
Facsimile: 866.974.7329

Dylan G. Savage, Bar No. 310452
dsavage@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: 212.999.5800
Facsimile: 866.974.7329

Attorneys for Defendant Roku, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

A.A., a minor, by and through their guardian ad Litem DEIDRE BOLIN; A.B., a minor, by and through their guardian ad Litem CARESS JOHNSON; A.C., a minor, by and through their guardian ad Litem GREGARY JOHNSON; A.D., a minor, by and through their guardian ad Litem TYLER LANGSAM; A.E., a minor, by and through their guardian ad Litem KEITH STRATTON; A.F., a minor, by and through their guardian ad Litem JACOB VANDERSMITTE, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

ROKU, INC.,

*Defendant.*

Case No. 5:25-CV-06284-NW

**DEFENDANT ROKU, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: April 15, 2026
Time: 9:00 a.m.
Judge: Honorable Noël Wise
Crtm: 3
Flr: 5th

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Delaware or California law applies, not the laws of Plaintiffs' residences. ........ 2

B. Three estoppel doctrines independently compel arbitration here. ........ 6

1. Plaintiffs' preexisting relationship with their parents justifies compelling arbitration. ........ 6

2. Plaintiffs directly benefited from using their parents' Roku accounts. ........ 9

3. Plaintiffs' claims are intertwined with their parents' agreement. ........ 11

4. Illinois, Nevada, and New Jersey law would also compel arbitration. ........ 13

C. Plaintiffs' policy arguments cannot override the FAA, and arbitration is an appropriate forum. ........ 155

III. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.D. v. Credit One Bank, N.A.*,
885 F.3d 1054 (7th Cir. 2018) ........ 13

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ........ 6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........ 14, 15

*Atencio v. Bird Rides Inc.*,
2023 WL 8168955 (C.D. Cal. Nov. 3, 2023) ........ 9, 10

*B.F. v. Amazon.com Inc*,
858 F. App'x 218 (9th Cir. 2021) ........ 9

*Boucher v. Alliance Title Co.*,
127 Cal. App. 4th 262 (2006) ........ 12

*Brown v. Comcast Corp.*,
2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) ........ 11

*Chan v. Charter Comm'cns Holding Co.*,
2015 WL 12655701 (C.D. Cal. Aug. 6, 2015) ........ 8

*Chen v. L.A. Truck Ctrs., LLC*,
7 Cal. 5th 862 (2019) ........ 3

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ........ 9, 11

*Corn v. Kohl's Corp.*,
2025 WL 1785943 (N.D. Cal. June 9, 2025) ........ 10

*County of Contra Costa v. Kaiser Found. Health Plan*,
47 Cal. App. 4th 237 (1996) ........ 8, 10

*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*,
158 Cal. App. 4th 1061 (Cal. Ct. App. 2008) ........ 4, 7, 8

*CRS Recovery, Inc. v. Laxton*,
600 F.3d 1138 (9th Cir. 2010) ........ 5

*Doyle v. Giuliucci*,
62 Cal. 2d 606 (1965) ........ 6

*E.A.R.R. v. Roku, Inc.*,
2026 WL 369238 (C.D. Cal. Feb. 6, 2026) ........ 1, 7, 8, 9, 10

*El Jen Medical Hosp. v. Tyler*,
535 P.3d 660 (Nev. 2023) ........ 13

*Elsasser v. DV Trading, LLC*,
444 F. Supp. 3d 916 (N.D. Ill. 2020) ........ 13

*Ervin v. Nokia, Inc.*,
812 N.E.2d 534 (Ill. App. 2004) ........ 5, 14

*Facta Health, Inc. v. Pharmadent, LLC*,
2020 WL 5957619 (D.N.J. Oct. 8, 2020) ........ 2, 5, 13, 14

*Fairstead Cap. Mgmt. LLC v. Blodgett,*,
288 A.3d 729 (Del. Ch. 2023) ........ 9

*Haskins v. First Am. Title Ins. Co.*,
866 F. Supp. 2d 343 (D.N.J. 2012) ........ 13

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) ........ 3

*Hirsch v. Amper Financial Services*,
215 N.J. 174 (2013) ........ 5, 6, 14

*Hofer v. Emley*,
2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) ........ 9, 10

*Hojnowski v. Vans Skate Park*,
187 N.J. 323 (2006) ........ 6

*Houston Cas. Co. v. Kinsale Ins. Co.*,
2025 WL 2779139 (D.N.J. Sept. 30, 2025) ........ 14

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ........ 6

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*,
581 U.S. 246 (2017) ........ 6

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) ........ 15

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 13

*In re Marriage of Smith*,

806 N.E.2d 727 (2004)........................................................................................ 5

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012)................................................................................ 3

*Mireskandari v. Gallagher*,
59 Cal. App. 5th 346 (2020)................................................................................ 4

*Montoya v. Comcast Corp.*,
2016 WL 5340651 (E.D. Cal. Sept. 23, 2016)........................................... 10, 11, 12

*Motise v. America Online, Inc.*,
346 F. Supp. 2d 563 (S.D.N.Y. 2004)...................................................................... 8

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009)............................................................................ 12

*Murphy v. DirecTV*,
724 F.3d 1218 (9th Cir. 2013)............................................................................ 12

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*,
922 A.2d 417 (Del. Ch. 2007)............................................................................... 3

*Nedlloyd Lines B.V. v. Superior Ct.*,
3 Cal. 4th 459 (1992) ......................................................................................... 3

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)........................................................................ 9, 10

*Nicosia v. Amazon.com, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y. 2019) .................................................................. 8

*Pietrelli v. Peacock*,
13 Cal. App. 4th 943 (1993)............................................................................... 10

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010)............................................................................ 4, 5

*In re Ring LLC Privacy Litigation*,
2021 WL 2621197 (C.D. Cal. June 24, 2021) ......................................................... 9

*RUAG Ammotec GmbH v. Archon Firearms, Inc.*,
139 Nev. 465 (2023) .......................................................................................... 13

*S.G. v. Epic Games, Inc.*,
796 F. Supp. 3d 614 (N.D. Cal. 2025) ............................................... 5, 7, 8, 10, 15

*Simple Traditions, Inc. v. Paychex, Inc.*,
2024 WL 4957225 (E.D. Cal. Dec. 3, 2024)............................................................ 9

*Wash. Mut. Bank, FA v. Superior Ct.*,
24 Cal. 4th 906 (2001) .......... 4

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
2006 WL 2473665 (Del. Ch. Aug. 22, 2006).......... 9, 11

*In re Wyze Data Incident Litig.*,
2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) .......... 2

*Yeh v. Tesla, Inc.*,
2023 WL 6795414 (N.D. Cal. Oct. 12, 2023).......... 7, 8, 10, 11, 12

## I. INTRODUCTION

When a parent signs up for a household service subject to an arbitration agreement, their child who uses the service must arbitrate claims arising from that use. Plaintiffs' Opposition asks this Court to adopt a rule that would allow any user to avoid arbitration simply by having a family member create the account requiring arbitration. That is not the law. As Roku's Motion showed, three separate equitable doctrines—preexisting-relationship estoppel, direct-benefits estoppel, and intertwined-claims estoppel—require Plaintiffs to arbitrate. Indeed, just last month, another California federal court confronted the same allegations against Roku—non-signatory minors asserting privacy claims arising from their use of Roku's streaming services through their parent's account—and compelled arbitration based on equitable estoppel. *See E.A.R.R. v. Roku, Inc.*, 2026 WL 369238, at *4 (C.D. Cal. Feb. 6, 2026). This Court should do the same.

The Court should compel arbitration regardless of which state's law governs. Under California choice-of-law rules, either the law selected by a choice-of-law provision (Delaware) or the forum state's law (California) presumptively applies. Plaintiffs make no meaningful attempt to rebut that presumption. And although Plaintiffs invoke case law from other states, those laws do not apply, no true conflict otherwise exists, and California's interests outweigh the other states' interests in any event. And even if those other states' laws applied to some claims, Plaintiffs would still need to arbitrate.

On the merits, the path is straightforward. Plaintiffs use Roku services delivered under their parents' account terms and now seek to recover for alleged injuries arising from that use. Multiple recent decisions, including the *E.A.R.R. v. Roku* decision just issued, apply the preexisting-relationship doctrine to compel children to arbitrate claims concerning household products based on their parents' agreement to arbitrate. Plaintiffs cannot square those authorities with their theory that the preexisting-relationship doctrine is limited "to contract[s] for medical services" alone. Opp. at 6. Indeed, *E.A.R.R. v. Roku* expressly rejected the same attempt to confine the doctrine in that manner. *See* 2026 WL 369238, at *3.

In addition, direct-benefits estoppel and intertwined-claims estoppel lead to the same outcome because Plaintiffs received benefits from their parents' Roku accounts and their claims

flow from the services made accessible through those accounts. Plaintiffs incorrectly seek to impose a stringent knowledge prerequisite on direct-benefits estoppel, Opp. at 9, and offer no sound basis for arbitrarily limiting intertwined-claims estoppel to scenarios "when a nonsignatory seeks to compel a signatory to arbitrate," Opp. at 11.

Accordingly, this Court should follow well-settled law and compel arbitration here.

## II. ARGUMENT

Plaintiffs concede many facts relevant to the arbitration question. Plaintiffs do not dispute that Roku's terms are presented through a standard clickwrap process requiring affirmative assent and that those terms require arbitration of all product- and service-related disputes with Roku. Mot. 12–13; Opp. at 4–5. Plaintiffs do not dispute that their parents had to agree to the terms to create a Roku account and did not opt out of arbitration. Mot. 13; Opp. at 4–5.[1] And Plaintiffs do not dispute that if they are bound by the arbitration agreement, then any questions about the agreement's scope must be resolved by the arbitrator. Mot. 19–22; Opp. at 15–16. Accordingly, the only contested question before this Court is whether Plaintiffs can be bound by the terms. Under fundamental principles of equitable estoppel, the answer is yes.

### A. Delaware or California law applies, not the laws of Plaintiffs' residences.

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quotation omitted). Application of California choice-of-law principles dictates that either Delaware or California law governs the equitable-estoppel analysis here.

California choice-of-law principles support the application of Delaware law. "As the forum state, California will apply its own law unless a party litigant timely invokes the law of a foreign state." *Chen v. L.A. Truck Ctrs., LLC*, 7 Cal. 5th 862, 867 (2019) (quotation omitted). One way to invoke a foreign state's law is through a contractual choice-of-law provision. California courts

---

[1] In a footnote, Plaintiffs protest that Roku has "not provided any records" establishing their parents' individual agreement to the terms. Opp. at 5 n.4. But such individualized proof is unnecessary where, as here, evidence "show[s] that any person who had such a user account could not have accessed his or her account without, at some point, clicking a box indicating that he or she agreed to Defendant's terms and conditions." *In re Wyze Data Incident Litig.*, 2020 WL 6202724, at *3 (W.D. Wash. Oct. 22, 2020); *see* Mot. 8–9.

enforce such clauses if the chosen state has a "substantial relationship to the parties or their transaction" and that state's law does not conflict with a "fundamental policy" of California. *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 466–68 (1992). Here, the Dispute Resolution Terms contain a choice-of-law provision providing for application of Delaware law. ECF No. 42-5, Ex. D § 3. The requisite "substantial relationship" to Delaware exists because Roku is a Delaware corporation. Compl. ¶ 24; *see Nedlloyd*, 3 Cal. 4th at 467. And Plaintiffs concede that "there is no material difference . . . between Delaware's and California's laws" on these issues—and thus no conflict with California policy. Opp. at 4; *see also, e.g.*, *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429–31 (Del. Ch. 2007) (recognizing equitable estoppel as a basis to bind a non-signatory to contractual obligations), *aff'd*, 948 A.2d 411 (Del. 2008). Thus, under California choice-of-law principles, application of Delaware law is appropriate.

Citing *In re Henson*, 869 F.3d 1052 (9th Cir. 2017), Plaintiffs contend that they "never agreed to be bound by the agreement in which the Delaware choice of law provision appears." Opp. at 4. But *Henson* is inapplicable because it involved a non-signatory seeking to compel arbitration while lacking any preexisting relationship with either signatory. *See* 869 F.3d at 1057. In that context, the court stated that the relevant parties "never agreed that New York law would govern the disputes between them." *Id.* at 1059. Here, by contrast, Plaintiffs have a preexisting relationship with the Roku accountholders—and the accountholders agreed to Roku's Dispute Resolution Terms, including the choice-of-law provision. ECF No. 42-4, Ex. C at 1, 5–6.

If this Court were to conclude that the Delaware choice-of-law provision does not apply, then California law would govern. "The party advocating the application of a foreign state's law bears the burden" of showing that the other state's law applies under California's "governmental interest" analysis. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010). That analysis proceeds in three steps. First, the court determines whether the foreign state's law differs from California law on "the particular issue." *Id.* at 994 (citation omitted). Second, "if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Id.* at 994–95 (citation omitted). Third, "if the court finds that there is a true conflict," it "applies the law of the

state whose interest would be the more impaired" if "its policy were subordinated." *Id.* at 995 (quotation & citation omitted). If the party invoking foreign law fails to meet its burden on any of these steps, the court "may properly find California law applicable." *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 920 (2001).

Plaintiffs observe that some of them are residents of other states (Illinois, Nevada, and New Jersey), but that observation alone falls short of meeting their burden to displace California law. Indeed, rather than attempt to establish that those state laws differ from California law or that those states have a greater interest in seeing their laws apply, Plaintiffs concede that no choice-of-law analysis is necessary. Opp. at 4 ("[T]he Court does not need to conduct a choice of law analysis to determine whether Roku can compel Plaintiffs to arbitrate their claims."). Plaintiffs do not explain why or whether there is a conflict between California law and the laws of the other states they reference. Nor do they analyze the interests that any of those states would have in the application of their law to this dispute. Simply put, state residency is not sufficient to override the forum-law default. *See, e.g.*, *Mireskandari v. Gallagher*, 59 Cal. App. 5th 346, 361 (2020), *as modified on denial of reh'g* (Jan. 21, 2021) (applying California law notwithstanding plaintiff's foreign residency).

In any event, the governmental-interest analysis supports application of California law. No "true conflict" exists between the laws of the relevant jurisdictions. *Pokorny*, 601 F.3d at 995. "Under California law, a nonsignatory can be compelled to arbitrate . . . where 'a preexisting relationship'"—such as a "parent-child relationship"—"existed between the nonsignatory and one of the parties to the arbitration agreement." *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1069–70 (Cal. Ct. App. 2008) (citation omitted). Plaintiffs have identified no cases from Illinois, Nevada, or New Jersey rejecting the preexisting-relationship doctrine as a basis for estoppel. And while they assert they have "not found any" cases from those jurisdictions addressing that doctrine, Opp. at 8, the *absence* of authority does not create a conflict. *See CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142–43 (9th Cir. 2010) (finding no conflict where Virginia law was silent on the particular issue).

Plaintiffs assert that Illinois and New Jersey require a signatory to show "detrimental reliance" to enforce an arbitration provision against a non-signatory. Opp. at 12. But none of their cited decisions applied that element in a case involving equitable estoppel based on a preexisting relationship. In *Hirsch v. Amper Financial Services*, 215 N.J. 174 (2013), the New Jersey Supreme Court expressly limited its holding to the "intertwinement . . . theory for compelling arbitration." *Id.* at 192; *see Facta Health*, 2020 WL 5957619, at *3 (no preexisting relationship). And in *Ervin v. Nokia, Inc.*, 812 N.E.2d 534 (Ill. App. Ct. 2004), the Illinois court rejected a non-signatory manufacturer's attempt to invoke an arbitration provision against a consumer who agreed to arbitrate with a different company—where the two companies had no close preexisting relationship. *See id.* at 541; *In re Marriage of Smith*, 806 N.E.2d 727, 730–31 (Ill. App. Ct. 2004) (no arbitration provision involved at all). The fact that Illinois and New Jersey consider detrimental reliance in discrete contexts involving no preexisting relationship does not establish a "true conflict" in the "circumstances of th[is] particular case." *Pokorny*, 601 F.3d at 995 (quotation omitted). Indeed, Plaintiffs' cited decisions "tell[] [the Court] only about how" Illinois and New Jersey law apply detrimental reliance outside the preexisting-relationship context, and this Court should "decline [Plaintiffs'] invitation to read" the decisions "more broadly than [their] text requires." *CRS Recovery*, 600 F.3d at 1143; *see id.* at 1142 (rejecting application of foreign state's law because it was "equivocal" on the relevant issue). That is especially true because the interests purportedly served by requiring detrimental reliance—"justice, morality and common fairness," *Hirsch*, 215 N.J. at 193 (quotation omitted)—are the same interests served by California's own equitable-estoppel doctrines. *See S. G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025) ("[T]he preexisting relationship between [a child] and his father makes it 'equitable' to impose the duty to arbitrate upon [the child] even if he did not sign the [agreement] himself.").

Even if there were a conflict, California's interests would be most impaired if its law were not applied. "California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97 (2000).[2] And for decades,

[2] New Jersey's consideration of detrimental reliance appears to be based on covert hostility to arbitration. *See Hirsch*, 215 N.J. at 192 (expressing skepticism about the "[a]pplication of estoppel to compel arbitration" because "parties are giving up their right to sue in court"). But a

California courts have recognized that parents may enter contracts "that bind[] the[ir] child[ren] to arbitrate any dispute arising thereunder." *Doyle v. Giuliucci*, 62 Cal. 2d 606, 610 (1965). That principle serves an important function: "[A]ssur[ing]" that minors can reap "the benefits" of services that companies may otherwise be reluctant to provide to minors if they could simply "disaffirm arbitration." *Id.* By contrast, as noted above, Illinois and New Jersey have not addressed whether detrimental reliance applies in cases involving a parent-child relationship—which suggests that any interests they have in that requirement would not be seriously impaired by applying California's rule here. And that is confirmed by New Jersey decisions holding that "a parent can bind a minor child to arbitrate future disputes." *Hojnowski v. Vans Skate Park*, 187 N.J. 323, 327 (2006). Because California has applied its relevant "rule of law" "recent[ly]," and Illinois and New Jersey have "exhibited little concern" about applying detrimental reliance in this context, California's "interests would be the more impaired if its law were not applied." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 114–15 (2006) (citation omitted). Thus, the governmental-interests test also supports the application of California law.

### B. Three estoppel doctrines independently compel arbitration here.

Turning to the merits, any one of three equitable-estoppel doctrines—preexisting relationship, direct benefits, or intertwined claims—compels arbitration. Plaintiffs cannot escape any of those doctrines—much less all three.

#### 1. Plaintiffs' preexisting relationship with their parents justifies compelling arbitration.

As Roku explained in its Motion, Plaintiffs should be compelled to arbitrate their claims because their parents agreed to arbitration when creating Roku accounts. Mot. 14–16. In multiple recent cases—including a case virtually identical to this one—courts compelled children to arbitrate claims related to products or services their parents obtained because of the close preexisting relationship between a parent and child. *See E.A.R.R. v. Roku*, 2026 WL 369238, at *4; *S.G.*, 796

---

rule that "singles out arbitration agreements for disfavored treatment" runs counter to the FAA and is thus not founded in a valid state interest at all. *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 581 U.S. 246, 248 (2017); *see id.* at 250–52 (holding that the FAA "displace[d] a[] rule that covertly" disfavored arbitration by requiring a "clear[] statement" before interpreting certain contracts to deprive persons of the "right[] of access to the courts").

F. Supp. 3d at 620–21; *Yeh v. Tesla, Inc.*, 2023 WL 6795414, at *7–8 (N.D. Cal. Oct. 12, 2023); *see also* Order re Def's. Mot. to Compel Arbitration, *Garcia v. Roblox Corp.*, No. 2:25-cv-03476 (C.D. Cal. Feb. 11, 2026), ECF No. 50 (compelling arbitration of nearly identical privacy claims brought by minors who accessed an online platform through parent-created accounts).[3]

Plaintiffs offer no persuasive distinction of these decisions. Plaintiffs suggest that in *S. G.*, "the plaintiff's father assented to certain terms 'on [his child's] behalf and for [his child's] benefit.'" Opp. at 7 (citation omitted). But the court in *S. G.* squarely held that "*the preexisting relationship*"—not the particular contractual terms—"makes it 'equitable' to impose the duty to arbitrate upon S.G. even if he did not sign the [agreement] himself." 796 F. Supp. 3d at 621 (emphasis added).

Plaintiffs also have no answer for *Yeh*. They observe that the court in *Yeh* compelled arbitration because the father's Tesla purchase "was, at least in part, to benefit and provide care for his child." 2023 WL 6795414, at *8; Opp. at 7. And likewise here, Plaintiffs' parents purchased Roku devices to benefit members of their households. Plaintiffs also emphasize *Yeh*'s statement that "[t]here is no bright-line rule under California law . . . that a child's claims must always be arbitrated whenever their parent has entered into an arbitration agreement related to the subject matter of the claims." 2023 WL 6795414, at *7; Opp. at 7. But Roku seeks no such categorical rule. Instead, it simply contends that in the context here—where the parent obtains the service for the household, agrees to terms for the household, and the child uses the service—the "preexisting relationship" between a parent and child "makes it 'equitable' to impose the duty to arbitrate upon

---

[3] Plaintiff A.D. attempts to circumvent preexisting-relationship estoppel by noting that their grandparent—rather than parent—created the Roku account through which A.D. accessed and used Roku's streaming services. Opp. at 5 n.4, 7-8; *see also* ECF No. 47-4 ¶¶ 2, 5 (Decl. of Tyler Langsam) (asserting that A.D.'s aunt purchased the Roku device for which A.D.'s grandmother created a Roku account). But the doctrine is not limited to parent-child relationships. It simply asks whether a "preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement," making it equitable to compel arbitration. *Crowley Maritime Corp.*, 158 Cal. App. 4th at 1070 (citation omitted). Grandparents and grandchildren plainly have such a relationship, and Plaintiffs cite no contrary authority. Moreover, whether A.D.'s aunt purchased the relevant Roku device is immaterial—what matters is whether Plaintiffs had a preexisting relationship with the *accountholder*. Regardless, the preexisting relationship between an aunt and her niece or nephew would likewise support estoppel.

[the child] even if he did not sign the [arbitration agreement] himself." *S. G.*, 796 F. Supp. 3d at 621.[4]

Plaintiffs erroneously seek to limit preexisting-relationship estoppel to cases involving parents "contract[ing] for medical services on behalf of their children." Opp. at 6. None of the decisions cited above or in Roku's Motion arose in the medical-services context. And the primary decision upon which Plaintiffs rely, *County of Contra Costa v. Kaiser Found. Health Plan*, 47 Cal. App. 4th 237 (1996), does not "purport to limit the applicability of the parent-child preexisting relationship exception to medical services," *E.A.R.R. v. Roku*, 2026 WL 369238, at *3. In fact, *County of Contra Costa* did not involve a parent-child relationship at all. And the court there observed that "arbitration agreements are enforced *with regularity* against nonsignatories"—with the "common factor" in those cases being simply "a preexisting relationship between the nonsignatory and one of the parties to the arbitration agreement." *Cnty. of Contra Costa*, 47 Cal. App. 4th at 242 (emphasis added).

Plaintiffs' reliance on *In re Ring LLC Privacy Litigation*, 2021 WL 2621197 (C.D. Cal. June 24, 2021), is likewise misplaced. *See* Opp. at 6–8. *Ring* misread *County of Contra Costa* and related decisions as limiting the preexisting-relationship doctrine to cases "involv[ing] a parent or spouse's ability to enter into a contract on behalf of her child or spouse for medical care or school activities." 2021 WL 2621197, at *8. Subsequent decisions have rejected *Ring* and its unduly cramped conception of the doctrine. *See E.A.R.R. v. Roku*, 2026 WL 369238, at *3–4 (citing cases).

In any event, *Ring* is factually distinguishable. The non-signatory children there were simply present in a home monitored by their parents' security cameras and were "passively

[4] Plaintiffs fare no better with their effort to distinguish additional decisions involving preexisting-relationship estoppel. Plaintiffs assert that *Chan v. Charter Comm'cns Holding Co.*, 2015 WL 12655701 (C.D. Cal. Aug. 6, 2015), only addressed preexisting-relationship estoppel in dicta. Opp. at 8 n.5. In fact, *Chan* reached an alternative holding that the children in that case "must arbitrate" because "an arbitration clause often applies to the spouse and children of the signatory." *Chan*, 2015 WL 12655701, at *5. And while Plaintiffs observe that *Crowley* "did not involve a preexisting relationship between the signatory and non-signatory," Opp. at 8 n.5, the court there plainly articulated the rule under California law that "a nonsignatory can be compelled to arbitrate" where "a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement," *Crowley*, 158 Cal. App. 4th at 1069-70 (citation omitted). Finally, although *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019), and *Motise v. America Online, Inc.*, 346 F. Supp. 2d 563 (S.D.N.Y. 2004), are decisions from outside the Ninth Circuit, both compelled children or spouses to arbitrate claims arising out of their family members' accounts.

exposed" to recording without ever logging in, operating the device, or invoking any account-based benefits. 2021 WL 2621197, at *7–8. Here, by contrast, Plaintiffs admit that they actively used Roku devices and streaming services—turning on the TV, selecting content, and streaming it—through Roku accounts governed by their parents' agreements. Compl. ¶¶ 206–59. As the court in *E.A.R.R. v. Roku* recognized just last month, a child's "intentional use of Roku devices made available in their household is distinct from the passive exposure to Ring home security devices by the plaintiff minor children in [*Ring*]." 2026 WL 369238, at *4.[5]

**2. Plaintiffs directly benefited from using their parents' Roku accounts.**

The preexisting-relationship doctrine alone suffices to apply estoppel here. This Court need go no further to grant Roku's motion to compel. But two other well-established estoppel doctrines also independently support this result.

First, Plaintiffs are bound by their parents' agreements governing their Roku accounts because Plaintiffs directly benefited from using those accounts. Mot. 16–17. "The Ninth Circuit has repeatedly expressed that equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Simple Traditions, Inc. v. Paychex, Inc.*, 2024 WL 4957225, at *6 (E.D. Cal. Dec. 3, 2024) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (same); *Hofer v. Emley*, 2019 WL 4575389, at *6 (N.D. Cal. Sept. 20, 2019) (same); *Cty. of Contra Costa*, 47 Cal. App. 4th at 242 (same); *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 755 (Del. Ch. 2023) (explaining that the doctrine of equitable estoppel prevents the non-signatory from accepting the benefits without also accepting the burdens). Here, Plaintiffs acknowledge that they used their parents' accounts to access Roku's streaming platform—which would not have been possible absent their parents' agreement with Roku. *See* Compl. ¶¶ 206–59; Opp. Exs. 1–5. In turn, Plaintiffs' claims arise directly from the very streaming

[5] In passing, Plaintiffs cite *B.F. v. Amazon.com Inc*, 858 F. App'x 218 (9th Cir. 2021), Opp. at 5, but that decision applied Washington law and found the estoppel issue controlled by a Washington Supreme Court decision declining to compel arbitration by non-signatories asserting certain tort claims. *B.F.*, 858 F. App'x at 220–21. Here, by contrast, numerous California decisions compel arbitration based on the preexisting-relationship theory of estoppel. *See Atencio v. Bird Rides Inc.*, 2023 WL 8168955, at *3 (C.D. Cal. Nov. 3, 2023) (distinguishing *B.F.* on this basis).

activity enabled by those accounts. Equitable estoppel prevents Plaintiffs from benefitting from their parents' accounts while avoiding the concomitant obligation to arbitrate disputes involving those accounts.

Plaintiffs incorrectly suggest that under *Nguyen*, a non-signatory must subjectively know about an agreement to be bound by it. Opp. at 8–9. But what *Nguyen* actually states is that a "non-signatory to an arbitration agreement may be compelled to arbitrate where the nonsignatory '*knowingly exploits' the benefits of the agreement* and receives benefits flowing directly from the agreement." *Nguyen*, 763 F.3d at 1179 (emphasis added). Thus, what matters is that the non-signatory knowingly accepts and uses the service provided by the party who seeks to compel arbitration, not that they know of any specific contract, let alone its terms. *See id.*; *Montoya v. Comcast Corp.*, 2016 WL 5340651, at *5 (E.D. Cal. Sept. 23, 2016). That is why decisions consistently ask whether the non-signatory "knowingly received the primary benefit of the . . . Agreement." *Atencio*, 2023 WL 8168955, at *2; *see also Corn v. Kohl's Corp.*, 2025 WL 1785943, at *2 (N.D. Cal. June 9, 2025) (compelling arbitration because the non-signatory spouse received benefits flowing directly from her husband's relationship with Kohl's); *Hofer*, 2019 WL 4575389, at *7 (compelling arbitration because the non-signatory "received the only direct benefit").

If knowledge of an agreement's specific terms were required, minors could always evade arbitration simply by claiming ignorance. But as already explained, courts regularly compel non-signatory minors to arbitrate under estoppel principles. *See, e.g., E.A.R.R. v. Roku*, 2026 WL 369238, at *4–5; *Garcia,* ECF No. 50 at 11–13, 17; *S.G.*, 796 F. Supp. 3d at 620–22; *Yeh*, 2023 WL 6795414, at *7–9; *Pietrelli v. Peacock*, 13 Cal. App. 4th 943, 948 (1993) (compelling a child not yet conceived at the time of contracting to arbitrate). By repeatedly using Roku's platform, Plaintiffs knowingly exploited the benefits that Roku agreed to provide to their parents under Roku's contractual relationship with the parents. That is all the law requires.

Plaintiffs' cited authorities do not suggest otherwise. In *Comer*, the Ninth Circuit rejected application of the direct-benefits theory because the non-signatory plaintiff was merely a "passive participant" in the relevant ERISA plan and thus did not knowingly exploit "the investment management agreements." 436 F.3d at 1102. Here, by contrast, Plaintiffs actively used Roku

devices and services. In *Brown v. Comcast Corp.*, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016), the non-signatory plaintiff was a guest who stayed with a friend—a Comcast accountholder—for "no more than a few months" and later received automated phone calls from Comcast. *Id.* at *2. The court declined to compel arbitration because the plaintiff's friendship with the accountholder was not a legally recognized preexisting relationship, and the plaintiff was merely a "passive participant" who did not take an "affirmative step" to exploit the benefits provided by Comcast. *Id.* at *7–8. In so holding, the court distinguished cases (like this one) involving "minors being bound by their parent's agreement to arbitrate" and emphasized that such a relationship is "formed by birth" and "carr[ies] significant recognition in our society." *Id.* at *4. And the court also distinguished cases where the plaintiff took an affirmative step to benefit from the defendant, *id.* at *7, which Plaintiffs did here by affirmatively using their parents' accounts to access Roku services.

**3. Plaintiffs' claims are intertwined with their parents' agreement.**

The Court should also compel arbitration for another reason: Plaintiffs' claims are intertwined with their parents' agreements with Roku. Mot. 18–19. *See Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006) (compelling arbitration where a non-signatory's claims were premised on and inseparable from the underlying agreement). California courts have applied an intertwinement theory on facts similar to those here. In *Montoya*, non-signatory household members who "were in regular use of [Comcast's] services" brought privacy claims against Comcast for allegedly allowing third parties to access their information. 2016 WL 5340651, at *2, *4. The court compelled arbitration because the plaintiffs' claims "rel[ied] on," and "presume[d] the existence of, the underlying contract benefits or obligations." *Id.* at *5. Similarly, in *Yeh*, the court compelled arbitration after concluding that the child plaintiff's claims were "closely intertwined with the claims his father agreed to arbitrate" with Tesla. 2023 WL 6795414, at *8.

As in *Montoya* and *Yeh*, Plaintiffs' claims here are intimately intertwined with their parents' contractual relationships with Roku. Plaintiffs allege that Roku collected and disclosed their information while they used Roku's services. And those alleged data practices occurred only because Plaintiffs used services that were available through Roku accounts governed by the

agreement. Plaintiffs' claims therefore "presume the existence of" that account-based contractual relationship and challenge conduct occurring within it. *Montoya*, 2016 WL 5340651, at *5.

Plaintiffs' assertion that they have not "actively utilized [Roku's] infrastructure," Opp. at 13, contradicts their own allegations. When Plaintiffs consumed Roku's streaming services, they "actively utilized" Roku's "infrastructure." *Montoya*, 2016 WL 5340651, at *5. Nor is it significant that in other cases, the parent brought claims alongside the child. Opp. at 14. The relevant question is not whether a non-signatory's claims are intertwined with a signatory's *claims*, but instead whether the non-signatory's claims are "intertwined with the contract." *Montoya*, 2016 WL 5340651, at *6. And here, Plaintiffs' claims are intertwined with their parents' contracts with Roku: Without those contracts, there would be no Roku accounts, no streaming access, and no alleged data collection. Plaintiffs' claims are thus based on the very account-based relationship created by the agreement.

Plaintiffs likewise err in attempting to limit intertwined-claims estoppel to certain narrow circumstances. *See* Opp. at 11–13. "Non-signatories," like signatories, may be "compelled to arbitrate when the claims of the non-signatory are intertwined with the underlying contractual obligations." *Montoya*, 2016 WL 5340651, at *5 (quotations omitted). And intertwined-claims estoppel applies to statutory claims, just as it does to violations of the relevant arbitration agreement. In fact, courts routinely compel arbitration of non-contract claims under an intertwined-claims estoppel theory. *See Yeh*, 2023 WL 6795414, at *1 (compelling child's statutory privacy claims to arbitration); *Montoya*, 2016 WL 5340651, at *5 (compelling household members' statutory privacy claims to arbitration); *Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 271–72 (Cal. App. Ct. 2006) (holding that tort claims were "intimately founded in and intertwined with" the relevant agreement and compelling arbitration).

Nor do Plaintiffs' other authorities help them avoid application of intertwined-claims estoppel. In *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013), the court declined to compel arbitration where the claims arose from alleged misrepresentations independent of the arbitration agreement. *Id.* at 1232–33. In *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009), the court rejected an estoppel argument because the claims did not "relate[] directly to" the relevant

agreement. *Id.* at 1047 (alteration in original). And in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), the claims "merely reference[d]" the relevant dealership contracts without "rely[ing] on the existence of th[ose]" agreements. *Id.* at 1132. Thus, each of those cases turned on the absence of *any* meaningful connection between the plaintiffs' claims and the agreement. Conversely, Plaintiffs' claims here relate directly to their parents' agreements with Roku because without those agreements, there would be no account, no streaming access, and no alleged injury.

**4. Illinois, Nevada, and New Jersey law would also compel arbitration.**

As explained above, either Delaware or California law applies to Roku's Motion. But even if the law of Plaintiffs' resident states applied, Plaintiffs would still need to arbitrate their claims. That is because Illinois, Nevada, and New Jersey all recognize that a non-signatory can be compelled to arbitrate based on principles of equity and fairness.

Nevada recognizes that "a nonsignatory to an arbitration agreement can be obligated to arbitrate" under traditional equitable doctrines such as "estoppel." *RUAG Ammotec GmbH v. Archon Firearms, Inc.*, 139 Nev. 465, 471 (2023) (citation omitted). And Nevada expressly adopts "direct benefits estoppel." *El Jen Med. Hosp. v. Tyler*, 535 P.3d 660, 670 (Nev. 2023). Thus, just as direct-benefits estoppel requires arbitration under California or Delaware law, it also requires arbitration under Nevada law.

Illinois and New Jersey law likewise recognize that non-signatories may be bound to arbitrate under estoppel doctrines. *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 348 (D.N.J. 2012); *Elsasser v. DV Trading, LLC*, 444 F. Supp. 3d 916, 928 (N.D. Ill. 2020). As Illinois courts have explained, "Estoppel is an equitable doctrine that prevents a non-signatory 'from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause.'" *Elsasser*, 444 F. Supp. 3d at 927 (quoting *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1064 (7th Cir. 2018)); *accord Facta Health*, 2020 WL 5957619, at *3. For the reasons given, those principles are satisfied because Plaintiffs assert claims that arise from their use of a service that their parents obtained for the household on the condition that any claims related to that service be arbitrated.

Any additional detrimental reliance that New Jersey and Illinois consider is similarly met here. *See Hirsch*, 215 N.J. at 193; *Ervin*, 812 N.E.2d at 542. Detrimental reliance exists where, as here, "the non-signatory has otherwise embraced the agreement and has obtained, or has sought to obtain, benefits flowing from it." *Facta Health*, 2020 WL 5957619, at *3. Thus, detrimental reliance reflects the same principles already captured by direct-benefits estoppel. *See Houston Cas. Co. v. Kinsale Ins. Co.*, 2025 WL 2779139, at *7 (D.N.J. Sept. 30, 2025) (detrimental reliance not necessary where plaintiff "knowingly exploits" the agreement). And, as explained, that doctrine applies here because Plaintiffs knowingly exploited the benefits of Roku's streaming service provided under Roku's agreement with their parents.

Roku can also demonstrate detrimental reliance by showing that the non-signatory "engage[d] in conduct . . . that induced reliance," and the signatory "changed [its] position to [its] detriment." *Hirsch*, 215 N.J. at 189 (citation omitted). Here, Plaintiffs affirmatively obtained access to a Roku service by virtue of their parents' agreement to arbitrate any claims related to that service. In turn, Roku relied on that arbitration agreement in structuring and operating its services. Among other things, Roku incurred the expense of providing accounts, maintaining streaming infrastructure, delivering content, and supporting devices on the premise that disputes "arising out of or relating to" use of the account and device shared by the household would be resolved through arbitration. Roku did not anticipate the possibility that disputes arising from the same household—and the same Roku service—would be treated differently depending on whether the parents or their children asserted claims, requiring Roku to litigate one set of disputes and arbitrate another.

Roku's reliance is not merely abstract. Arbitration provisions allocate risk in consumer agreements, reduce exposure to class-wide litigation, and allow companies to price and provide services accordingly. Indeed, the Supreme Court has recognized that class procedures "greatly increase[] risks to defendants" and fundamentally alter the risk profile of disputes. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011). The affordability of Roku devices and access to the Roku streaming platform reflects that allocation of risk. If non-signatory household users could accept the benefits of account-based access to Roku services while eschewing the arbitration

provision, Roku would bear materially greater litigation exposure than contemplated. Roku thus structured its conduct in reliance on the contractual relationship Plaintiffs now seek to repudiate.

### C. Plaintiffs' policy arguments cannot override the FAA, and arbitration is an appropriate forum.

Finally, Plaintiffs' policy objections cannot override the FAA, which mandates "enforcement of arbitration agreements according to their terms." *AT&T Mobility*, 563 U.S. at 344. Plaintiffs contend that compelling minors to arbitrate would harm "vulnerable plaintiffs" and "undermine the basic principle that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Opp. at 1 (citation omitted). But as explained above, courts routinely enforce arbitration agreements involving non-signatory minors. *See supra* p. 7. And Plaintiffs' position would create a loophole that would allow users to evade arbitration simply by accessing products or services through another person's account. If such conduct were permitted, "individuals could avoid contractual obligations governing the use of online accounts 'simply by having third parties create accounts and then using them,'" and "even when the third parties maintained the accounts with the knowledge and expectation that the plaintiff would use them." *S. G.*, 796 F. Supp. 3d at 621–22 (citation omitted). That result would defy common sense and equitable principles—not to mention the "liberal federal policy favoring arbitration agreements" codified in the FAA. *AT&T Mobility*, 563 U.S. at 346 (citation omitted).

## III. CONCLUSION

For the foregoing reasons, Roku respectfully requests that the Court compel arbitration and stay this action.[6]

---

[6] To the extent the Court concludes that factual issues remain, it should order limited discovery to address them. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 833 (9th Cir. 2022).

Dated: March 11, 2026

MORRISON & FOERSTER LLP

By: *s/ Eric J. Weiss*

Eric J. Weiss, *pro hac vice*
Mallory A. Gitt, *pro hac vice*
Anthony J. Mahmud, *pro hac vice*
Alberto Corona, Bar No. 339906

Attorneys for Defendant Roku, Inc.