UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

A. A., et al.,

               Plaintiffs,

       v.

ROKU, INC.,

               Defendant.

Case No. 25-cv-06284-NW

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: ECF No. 42

Plaintiffs, a putative class of minor children, sued Defendant Roku, Inc. ("Defendant" or "Roku") for allegedly collecting Plaintiffs' personal data and targeting advertisements to Plaintiffs in violation of federal and state laws. Compl., ECF No. 1. Roku makes internet-connected devices to stream video content. Roku now moves to compel arbitration of Plaintiffs' claims pursuant to the arbitration provision in Roku's terms, which Plaintiffs' guardians accepted before accessing any Roku services. ECF No. 42 ("Mot.").

The motion is fully briefed, and the Court held a hearing on the motion on April 29, 2026. ECF Nos. 47, 54, 57. The Court GRANTS Roku's motion to compel arbitration.

## I.    BACKGROUND

Plaintiffs are children who used Roku streaming sticks and Roku-enabled TVs to view child-directed content.[1] Compl. ¶¶ 206-259. Plaintiffs were all under the age of 13 at the time they used Roku devices. *Id*. ¶¶ 18-23. Plaintiffs' parents and legal guardians signed up for the Roku accounts, through which Plaintiffs viewed content. ECF Nos. 47-2 – 47-6 (declarations of

---

[1] Plaintiffs are minors who proceed under pseudonyms and each brings suit by and through their respective guardian ad litem: A.A. through Deidre Bolin; A.B. through Caress Johnson; A.C. through Gregary Johnson; A.D. through Tyler Langsom; A.E. through Keith Stratton; and A.F. through Jacob Vandersmitte.

Plaintiffs' guardians).

Customers are required to create a Roku account to activate and use the content streaming function of Roku's products. Decl. of Julian Riediger in Support of Mot. ("Riediger Decl.") ¶¶ 2-5; ¶ 6, Ex. C ("Roku Account Terms"). "Roku has required individuals creating a Roku account to check a box confirming their agreement to Roku's terms since at least February 2015." *Id*. ¶ 3. Roku's terms require accountholders to be at least 18 years old, or the legal age of majority in the country of use. Roku Account Terms, 1. Roku most recently updated their terms in February 2024, and existing customers were required to affirmatively consent to the updated terms to continue to use the streaming functions of their Roku products. Riediger Decl. ¶¶ 10-11. Roku also notified customers by email of the updates to the terms. *Id*.

Accepting Roku's terms requires acceptance of the dispute resolution terms including a mandatory arbitration provision with a class action waiver. *Id*. ¶ 7, Ex. D ("Dispute Resolution Terms"). The arbitration provision states:

> READ THESE DISPUTE RESOLUTION TERMS CAREFULLY. THEY SUPERSEDE AND REPLACE ALL PRIOR TERMS FOR RESOLVING DISPUTES BETWEEN YOU AND ROKU, REQUIRE YOU AND ROKU TO ARBITRATE CERTAIN CLAIMS, AND LIMIT HOW YOU AND ROKU CAN SEEK RELIEF FROM EACH OTHER. WITH LIMITED EXCEPTIONS, THESE TERMS PRECLUDE YOU AND ROKU FROM SUING IN COURT OR PARTICIPATING IN A CLASS ACTION AND YOU AND ROKU AGREE THAT ARBITRATION WILL BE SOLELY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ARBITRATION, CLASS ACTION, OR ANY OTHER REPRESENTATIVE PROCEEDING. YOU AND ROKU ARE EACH WAIVING THE RIGHT TO TRIAL BY A JURY. FOLLOW THE INSTRUCTIONS BELOW IN SECTION 1(L) IF YOU WISH TO OPT OUT OF THE REQUIREMENT TO ARBITRATE.

*Id*., Section 1. The arbitration provision defines which "claims" are subject to arbitration:

> any dispute, claim, cause of action, or controversy between you and Roku, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, that arises from or relates to your Roku account, any of our products, software, or services (including any devices linked to your Roku account, whether or not owned by you), any advertising or promotions conducted by or for Roku, or any use or disclosure of your information or information about you, or claims related to the arbitrability, validity, enforceability, or scope of any Roku consumer terms and conditions between you and Roku (including these Dispute Resolution Terms) or any portion of them.

2

*Id*., Section 1(A).

A customer may opt out of arbitration by sending a written notice to Roku within 30 days of agreeing to the terms. *Id*., Section 1(L). Roku's records do not indicate that Plaintiffs' guardians opted out of the arbitration provision. Riediger Decl. ¶ 14.

On July 25, 2025, Plaintiffs, through their guardians, initiated this case on behalf of a putative nationwide class and four state subclasses in California, Illinois, Nevada, and New Jersey. *See* Compl. Plaintiffs bring 14 claims alleging that Roku violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), and various state laws by targeting advertisements to children and collecting, sharing and profiting from their "Personal Information," including voice recordings, geolocation data, and browsing histories.

On December 9, 2025, Roku filed a motion to compel arbitration against Plaintiffs pursuant to Roku's dispute resolution terms. ECF No. 42. In support of the motion, Roku filed a declaration (with exhibits) of Julian Riediger, Roku's Director of Product Management and Privacy. *See* Riediger Decl. Plaintiffs opposed, and Roku filed a reply. ECF Nos. 47, 54. The Court held a hearing on the motion on April 29, 2026. ECF No. 57.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a general policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate."). The principal purpose of the policy is to "ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC*, 563 U.S. at 347 n.6 (2011). "Arbitration is a matter of contract, and the [FAA] requires courts to honor parties' expectations." *Id*. at 351.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such an arbitration proceed in the manner provided for in [the

United States District Court
Northern District of California

arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id*. If such a showing is made, the district court shall also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate. *Id*. § 3.

On a motion to compel arbitration, a district court's involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox*, 533 F.3d at 1119 (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). A party seeking to compel arbitration under the FAA bears the burden of making this showing. *Id*. In deciding whether parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotations omitted). A determination on arbitrability – whether the agreement encompasses the dispute – is made "on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241 (1962).

## III.   DISCUSSION

Here, there are three issues before the Court: (1) whether a valid agreement to arbitrate exists; (2) if it does, whether Plaintiffs – who are minors and nonsignatories – are bound by it; and (3) whether the agreement encompasses the dispute at issue (arbitrability). *See Cox*, 533 F.3d at 1119. The first and third issues are not in dispute. The parties do not contest that a valid arbitration agreement exists between Plaintiffs' guardians and Roku. Opp'n to Mot. at 3, ECF No. 47. Nor do the parties challenge that questions of arbitrability have been delegated to the arbitrator. *Id*. at 15-16. The parties do dispute, however, whether Plaintiffs are bound by the arbitration agreement entered into by their respective guardians.

### A.      Whether Roku Can Bind the Plaintiffs to the Arbitration Agreement

Roku argues that, under the doctrines of equitable estoppel, Plaintiffs must be compelled to arbitrate their claims. Mot. at 3. Specifically, Roku contends that Plaintiffs are compelled to arbitrate pursuant to the equitable doctrines of preexisting relationship, direct benefits, and intertwined claims. The Court first turns to Roku's argument that the preexisting relationship

4

United States District Court
Northern District of California

between Plaintiffs and their guardians categorically compels Plaintiffs' claims to arbitration.

Non-signatories generally cannot be compelled to arbitrate. *Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 47 Cal. App. 4th 237, 245 (1996), *as modified* (Aug. 1, 1996) ("A party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration."). However, there are certain exceptions. Under California law, a non-signatory can be compelled to arbitrate "where a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1070 (2008) (internal citations omitted). One such example of a preexisting relationship is a parent-child relationship. *Id*. (other examples of the preexisting relationship include agency, spousal relationship, and the relationship of a general partner to a limited partnership).

"While there is 'no bright-line rule . . . that a child's claims must always be arbitrated whenever their parent has entered into an arbitration agreement related to the subject matter of the claims,' courts have compelled the child to arbitrate particularly where the parent entered the agreement at least in part for the child's benefit." *S. G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025) (quoting *Yeh v. Tesla, Inc.*, No. 23-CV-01704-JCS, 2023 WL 6795414, at *7-8 (N.D. Cal. Oct. 12, 2023)). Here, it is not clear whether Plaintiffs' guardians acted "for the child's benefit" when they signed Roku's terms and created an account. The declarations by Plaintiffs' guardians merely state that they purchased Roku devices, and that their child did not themselves accept Roku's terms. *See* ECF Nos. 47-2 – 42-6. However, Plaintiffs' allegations and the record support that the guardians accepted Roku's updated terms as recently as February 2024;[2] this timeline overlaps with the relevant period in the complaint and necessarily means (because the allegations in the complaint assert) that Plaintiffs' guardians were aware of their children watching Roku content. *See* Compl. ¶¶ 18-23; ECF Nos. 47-2 – 42-6. Plaintiffs allege

---

[2] As Roku notes, individualized evidence of affirmative acceptance of the updated terms is not necessary when continuing use of the account is conditioned on acceptance of the terms. Plaintiffs do not plead that the stopped using Roku services.

that they "viewed and interacted with child-directed content on Roku's platforms," and that "[m]uch of the programming on the Roku platform is child-directed." Compl. ¶¶ 36, 207. The record supports an inference that Plaintiffs' guardians, at a minimum, continued to access Roku services by accepting the updated terms for both their and Plaintiffs' benefit.

Plaintiffs argue that the preexisting relationship doctrine is limited to binding minors to agreements entered into by guardians in narrow contexts, such as contracts for necessities. Plaintiffs rely heavily on *In re Ring*, which distinguished between cases "involv[ing] a parent or spouse's ability to enter into a contract on behalf of her child or spouse for medical care or school activities" and cases involving consumer goods. *In re Ring LLC Priv. Litig.*, No. CV-1910899-MWFRAOX, 2021 WL 2621197, at *8 (C.D. Cal. June 24, 2021); Opp'n to Mot. at 6-7. This Court joins the other courts in this district and other districts within the Ninth Circuit in finding that *In re Ring* "goes too far." *E.A.R.R., et al. v. Roku, Inc.*, No. EDCV 25-2474 JGB (DTBX), 2026 WL 369238, at *3 (C.D. Cal. Feb. 6, 2026). Multiple other district courts since *In re Ring* have required minor plaintiffs to arbitrate pursuant to the parent-child relationship doctrine – regardless of the context of the contract, including for consumer goods. *See id.* (granting Roku's motion to compel arbitration against minor plaintiffs under the parent-child relationship doctrine); *Yeh v. Tesla, Inc.*, No. 23-CV-01704-JCS, 2023 WL 6795414, at *8 (N.D. Cal. Oct. 12, 2023) (holding that, under the principles of equitable estoppel including the parent-child relationship doctrine, plaintiff is bound by the arbitration provision to which his father agreed); *S. G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025) (finding that the "preexisting relationship between S.G. and his father ma[de] it 'equitable'" to bind S.G. to the arbitration agreement his to which his father agreed). Here, Plaintiffs' allegations are akin to those in *S.G.*, where the minor plaintiff played an online video game, or to *Yeh*, where the minor plaintiff was a passenger in a car that his parents bought for its safety features. *S. G.*, 796 F. Supp. 3d at 621; *Yeh*, 2023 WL 6795414 at *8. In *S.G.*, *Yeh*, and in this case, the minor plaintiffs all benefited from their guardians' decisions to purchase and use a consumer good.

In this circumstance, the preexisting relationship between Plaintiffs and their guardians makes it "equitable" to impose the duty to arbitrate upon Plaintiffs even though they did not sign

United States District Court
Northern District of California

the terms themselves. *Crowley Mar. Corp.*, 158 Cal. App. 4th at 1070. "If the law were otherwise, individuals could avoid contractual obligations governing the use of online accounts 'simply by having third parties create accounts and then using them as the Plaintiff did,' even when the third parties maintained the accounts with the knowledge and expectation that the plaintiff would use them." *S. G.*, 796 F. Supp. 3d at 621 (quoting *Motise v. America Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004)).

The Court finds that the arbitration provision in Roku's terms binds Plaintiffs under the doctrine of equitable estoppel. Specifically, Plaintiffs' preexisting relationship with their guardians who signed the Roku terms compels Plaintiffs to arbitrate. The Court need not consider Roku's alternative arguments under the doctrine of equitable estoppel.

### B.    Arbitrability

Having found that Plaintiffs are bound to arbitrate, the Court revisits the third issue of arbitrability. *See Cox*, 533 F.3d at 1119 (arbitrability is the question of "whether the agreement encompasses the dispute at issue"). The dispute resolution terms provide "'clear and unmistakable' evidence that 'the parties agreed to arbitrate arbitrability.'" *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The arbitration provision states that "the arbitrator will have exclusive authority to make all procedural and substantive decisions regarding any Claim in arbitration and to grant any remedy or relief that would be available in a court under law or in equity," and specifies use of the American Arbitration Association. Dispute Resolution Terms, Section 1(E). Accordingly, the Court finds (and understands that the parties do not disagree) that the parties have delegated any question as to whether the dispute resolution terms cover the current dispute to the arbitrator.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Roku's motion to compel arbitration, COMPELS Plaintiffs to arbitration, and STAYS the case pending the outcome of any arbitration proceedings. The parties shall jointly notify the Court within seven days of the conclusion of arbitration and shall request that the Court dismiss this matter or take other action consistent with

the resolution of the arbitration.

**IT IS SO ORDERED.**

Dated: May 14, 2026

_____
Noël Wise
United States District Judge

United States District Court
Northern District of California